IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHANIE CRATER,

     Plaintiff,

v.

GEORGIA DEPARTMENT OF
TRANSPORTATION; C.W.
MATTHEWS CONTRACTING
COMPANY, INCOPORATED; and
DONALD BOWDEN,

     Defendants.

CIVIL ACTION FILE NO.

1:17-cv-5142-WSD-JKL

## <u>NON-FINAL REPORT AND RECOMMENDATION</u>

This is an employment discrimination case.  The case is before the Court on Defendant C.W. Matthews Contracting Company, Incorporated's ("C.W. Matthews") motion to dismiss [Doc. 22], and Defendant Donald Bowden's motion to dismiss, [Doc. 23].  For the reasons that follow, I **RECOMMEND** that the motions to dismiss be **GRANTED IN PART AND DENIED IN PART**.

# I.    BACKGROUND

## A.    Procedural Background

On December 13, 2017, Plaintiff filed the instant lawsuit against Defendants Georgia Department of Transportation ("GDOT"), C.W. Matthews, and Bowden, alleging violations of Title VII and Georgia law.  [Doc. 1 (Complaint).]  Following a partial motion to dismiss by GDOT [Doc. 12],[1] Plaintiff filed an amended complaint on February 7, 2018, [Doc. 15 (Amended Complaint)].  In the amended (and now operative) complaint, Plaintiff asserts the following claims:

- Count I:  sexually hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") against GDOT and C.W. Matthews;

- Count II:  sex discrimination in violation of Title VII against GDOT and C.W. Matthews on the basis of Plaintiff's sex (female) and sexual orientation;

- Count III:  retaliation in violation of Title VII against GDOT and C.W. Matthews;

---

[1] GDOT sought dismissal of Plaintiff's Georgia state law claims on the basis of sovereign immunity; Plaintiff subsequently dropped those claims against GDOT in her amended complaint.  [*See* Docs. 12, 15.]

2

- Count IV:  sexual harassment in violation of Georgia law against C.W. Matthews and Bowden;

- Count V:  false imprisonment against C.W. Matthews and Bowden;

- Count VI:  intentional infliction of emotional distress ("IIED") against C.W. Matthews and Bowden,

- Count VII:  negligent retention and negligent supervision against C.W. Matthews;

- Count VIII:  punitive damages against C.W. Matthews and Bowden under Georgia law; and

- Count IX:  attorney fees and costs under O.C.G.A. §13-6-11 against C.W. Matthews and Bowden.

(*See* Am. Compl., Counts I-IX.)

### B.    Factual Allegations in the Amended Complaint

Plaintiff alleges the following facts in her amended complaint.  She began working for GDOT as an engineer technician in 2003.  (Am. Compl. ¶ 12.)  At the times relevant to this action (roughly from March 2016 through August 2016), she held the position Construction Project Manager II and worked at a project site with

3

Bowden, a C.W. Matthews employee.[2]  (*Id.* ¶¶ 13-15.)  Plaintiff alleges that Bowden was assigned to supervise and work with her as the Project Foreman for the construction project; however, she does not explain in greater detail how he supervised her employment.  (*Id.*)

From March 2016 until August 2016, Plaintiff asserts that Bowden subjected her to repeated inappropriate comments and conduct, including the following:

- Bowden said "I knew you was a gay, but is that really your wife? Are y'all really married?" (Am. Compl. ¶ 18);

- Bowden stopped his equipment and approached Plaintiff to say, "Why would a woman want to do this type of work?  Do you think you're a man?" then grabbed his penis and stated, "I got some 'MAN' for you," (*id.* ¶¶ 19, 20);

- Bowden approached Plaintiff and stated, "Hey Stephanie, you are like the people in Sodom and Gomorrah," then laughed and grabbed his penis again, and said, "I got something that can save you from going to hell," (*id.* ¶ 22);

---

[2] Plaintiff does not identify in her amended complaint what kind of project site she and Bowden worked at.

4

- Bowden came into Plaintiff's office and while massaging his penis, smirked, "It's Friday, so don't ask me to do nothing," (*id.* ¶ 23);

- Bowden approached Plaintiff closely, and while grabbing his penis, said, "You are afraid of this," (*id.* ¶ 24);

- Bowden walked into Plaintiff's office and, again while grabbing and repositioning his penis, said "If you need anything call me. I got you," then, laughed and stared at her for a moment, before groping himself again and leaving, (*id.* ¶ 27);

- Bowden pulled up to her in his truck as she prepared to lock and leave the site, laughed and stated, "I know you miss me. Why you looking like you scared of me?" then got out of his truck and walked toward her holding his penis, and stated, "I ain't gonna hurt you, unless you want me to," (*id.* ¶ 28);

- three weeks later, Bowden came into Plaintiff's office and stated, "I'm back," then grabbed his penis again and said, "I know you missed me," (*id.* ¶ 32);

- Bowden came into the field office, looked at Plaintiff while touching his penis, and asked, "Why don't you like men?" (*id.* ¶ 37);

5

- after interfering with one of her site inspectors, Bowden asserted, "I love you too Stephanie," (*id.* ¶ 38);

- Bowden approached her in an aggressive manner and pointed his finger at her, stating, "You need to stay in a woman's place," (*id.* ¶ 39);

- Bowden told Plaintiff, "Jesus despises your kind, and you're going to hell," (*id.* ¶ 40);

- Bowden drove up and yelled at Plaintiff, "Stephanie can you hear me? I love you and I want to be friends," (*id.* ¶ 41);

- Bowden blocked the construction site gate as Plaintiff prepared to leave, kneeled in front of her personal vehicle, and stated, "I love you Stephanie," (*id.* ¶ 42).

Plaintiff repeatedly told Bowden to stop and to leave her alone. (Am. Compl. ¶¶ 17-50.) Within the first month and continuing throughout the relevant period, she also repeatedly complained about his harassment and discrimination to her supervisors at the GDOT and asked to be reassigned away from Bowden, but GDOT personnel took no action other than telling her she should stay away from him or else accept a demotion in order to obtain a reassignment. (*Id.* ¶¶ 25-26, 29-

36.)  In July 2016, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which both GDOT and C.W. Matthews knew about.  (*Id.* ¶ 53.)

C.W. Matthews became aware of Bowden's conduct around this time.  (Am. Compl. ¶¶ 43-45.)  On July 6, 2016, Plaintiff met with six different GDOT and C.W. Matthews supervisors, including Bowden, about Bowden's conduct.  (*Id.* ¶ 47.)  A C.W. Matthews supervisor acknowledged that Bowden had violated company policy, and assured Plaintiff that Bowden would "revisit" C.W. Matthews's equal employment policy and that he would be instructed not to contact Plaintiff.  (*Id.* ¶ 48.)  C.W. Matthews refused to remove him from the project, however, and instead requested that Plaintiff be removed.  (*Id.*)  Despite C.W. Matthews's assurances, Bowden sent Plaintiff a text message the following day. (*Id.*)  Around three weeks later, Plaintiff went to the Clayton County Sheriff's Office "to file a restraining order against Bowden."  (*Id.* ¶ 49.)  On August 2, 2016, Bowden was finally removed from the project.  (*Id.* ¶ 50.)  But even after being removed from the project, Bowden returned to the project site, drove up to her in his truck, and then sped off, spewing dirt and dust everywhere.  (*Id.*)

7

Plaintiff alleges that after she complained to her supervisors at GDOT and C.W. Matthews, she was offered a demotion in July 2016, she was denied the opportunity to interview for a promotion in August 2016, and someone "tampered" with three state vehicles assigned to her in August and September 2016.  (Am. Compl. ¶¶ 31, 57-59, 66.)  She asserts that both GDOT and C.W. Matthews were responsible for the attempted demotion and refusal to consider her for promotion, and that the acts were motivated both by discriminatory and retaliatory animus. (*Id.* ¶¶ 31, 57-59, 66, 74-75, 82.)

Additional factual allegations are discussed as necessary in the analysis below.

### C.    Defendants C.W. Matthews's and Bowden's Motions to Dismiss

On February 21, 2018, C.W. Matthews and Bowden moved to dismiss all claims asserted against them.  [Docs. 22, 23.]  C.W. Matthews argues that (1) Plaintiff fails to allege sufficient factual allegations to support that it was her employer for purposes of Title VII liability; (2) her Title VII claims based upon alleged sexual orientation discrimination are subject to dismissal because sexual orientation is not protected under the statute; (3) she has not alleged sufficient facts to support her alleged discrimination and retaliation claims against C.W. Matthews;

(4) her state law claims based upon vicarious liability for Bowden's conduct fail because his purported actions were not alleged to have been taken within the scope of his employment with C.W. Matthews, and the allegations do not support that C.W. Matthews ratified his conduct; and (5) her negligent retention and supervision claims are subject to dismissal because there are insufficient factual allegations to support C.W. Matthews's knowledge of Bowden's conduct.  [Doc. 22.]  C.W. Matthews and Bowden both argue that (6) Plaintiff's state law sexual harassment claim simply does not exist as a cause of action under Georgia law; (7) she fails to allege sufficient facts to support her claims for false imprisonment or IIED; and (8) her punitive damages and attorney fees claims are subject to dismissal for, among other things, a lack of any underlying state law tort claim.  [Docs. 22, 23.]

## II.    LEGAL ANALYSIS

### A.    Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While it need not provide "detailed factual allegations," a complaint must provide factual

allegations sufficient to plausibly set forth a plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555. Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Id.* The court is not required to accept as true legal conclusions couched as factual statements, *Iqbal*, 556 U.S. at 678, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief," as required by Rule 8(a)(2). *Id.* at 679 (internal quotation marks, bracket, and citation omitted). Furthermore, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that precludes relief or if it is based on a meritless legal theory, dismissal is warranted. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford Cty.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

### B.    Plaintiff's Title VII Claims Against C.W. Matthews

As noted, C.W. Matthews makes three arguments that Plaintiff's Title VII claims against it are subject to dismissal: (1) she has not alleged sufficient facts to show that C.W. Matthews was her employer for purposes of liability under Title VII; (2) sexual orientation is not a characteristic protected by Title VII; and (3) Plaintiff has failed to provide sufficient factual allegations to plausibly support her

10

discrimination and retaliation claims.  I address each in turn.

### 1.      Joint Employer Under Title VII

Title VII provides that it is an unlawful for an "employer" to "discharge any individual, or otherwise to discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," or "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. §§ 2000e-2(a)(1), 3(a). The statute defines an "employer" simply as "a person engaged in industry affecting commerce who has fifteen or more employees," 42 U.S.C. § 2000e(b), and includes corporations, 42 U.S.C. § 2000e(a).  In construing the requirements of Title VII, courts have also held that to qualify as an employer, there must be an "employment relationship" between the plaintiff and defendant.  *See Reeves v. DSI Sec. Servs.*, 331 F. App'x 659, 661 (11th Cir. 2009); *see also Roque v. Jazz Casino Co.*, 388 F. App'x 402, 404-05 (5th Cir. 2010).

It is possible for two or more businesses to be held liable for violations of Title VII under a "joint employer" theory, though this is a factual issue to be

determined based upon evidence in the record.  *See Virgo v. Riviera Beach Assocs.,
Ltd.*, 30 F.3d 1350, 1359-61 (11th Cir. 1994); *see also Holyoke Visiting Nurses
Ass'n v. NLRB*, 11 F.3d 302, 307 (1st Cir. 1993) ("[B]ecause the joint employer
issue is simply a factual determination, a slight difference between two cases might
tilt a case toward a finding of a joint employment.").  To be considered a joint
employer, an entity must exercise sufficient control over the essential terms and
conditions of a specific plaintiff's employment, *Virgo,* 30 F.3d at 1360, and the
analysis is therefore "employee-specific," *Peppers v. Cobb Cty., Ga.*, 835 F.3d
1289, 1300 (11th Cir. 2016) (quoting *Sandoval v. City of Boulder, Colo.*, 388 F.3d
1312, 1324 (10th Cir. 2004)).  In evaluating the degree of control a putative
employer has over a plaintiff, courts considers a number of factors, including
whether it controls:  (1) the means and manner of the plaintiff's work performance;
(2) the terms, conditions, or privileges of the plaintiff's employment; and (3) the
plaintiff's compensation.  *Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1245
(11th Cir. 1998).  The Eleventh Circuit has also held that "where two entities
contract with each other for the performance of some task, and one company retains
sufficient control over the terms and conditions of employment of the other
company's employees, we may treat the entities as 'joint employers' . . . ."  *Lyes v.*

12

*City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999); *see also Zillyette v. Capital One Fin. Corp.*, 1 F. Supp. 2d 1435, 1444 (M.D. Fla. 1998) ("[W]here two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment, a 'joint employer' relationship emerges."), *aff'd*, 179 F.3d 1337 (11th Cir. 1999).   Finally, the Eleventh Circuit has indicated that the joint employer analysis should "concentrate on the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." *Llampallas*, 163 F.3d at 1244-45.  Fulfilling the remedial purposes of the statute, the term employer is to be construed liberally within this analysis. *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987).

Here, C.W. Matthews argues that Plaintiff's assertion that she was jointly employed by the company are not supported by the allegations in the amended complaint.  [Doc. 22 at 7-10.]  Though this is a close call, the Court disagrees.  In support of her assertion that that C.W. Matthews was her joint employer along with GDOT for purposes of establishing Title VII liability, Plaintiff pleads the following:

- Bowden, an employee of C.W. Matthews, was the Project Foreman "for GDOT assignments with Plaintiff," which included working with Plaintiff and supervising her in her role as a Construction Project Manager on the construction site, (Am. Compl. ¶¶ 11, 13-15; *see also id.* ¶¶ 88, 105, 109);

- Bowden had apparent unfettered access to her on her job site, including the ability to regularly harass her and to repeatedly blocked her egress from the office or job site, (*see generally*, *id.* ¶¶ 17-55);

- Bowden's harassment of and access to Plaintiff could not be controlled by GDOT, her primary employer, (*id.*);

- Plaintiff's GDOT supervisor repeatedly denied her requests for help or reassignment, and eventually expressed concern that C.W. Matthews "would 'come after her,'" if anything was actually done to stop Bowden, (*id.* ¶¶ 25-26, 29-30, 33-36, 45);

- Plaintiff met with GDOT and C.W. Matthews supervisors together regarding her complaints about Bowden's behavior, (*id.* ¶¶ 46-47);

- C.W. Matthews supervisors admitted that Bowden's treatment of Plaintiff violated its employee policy (*id.*);

14

- C.W. Matthews had input regarding Plaintiff's assignment following that meeting, (*id.* ¶¶ 47, 74, 82); and

- GDOT and C.W. Matthews together discriminated against her when they reprimanded her without legitimate bases, failed to protect her from Bowden's harassment, and attempted to demote her or transfer her to a less desirable role, (*id.* ¶ 74);

- GDOT and C.W. Matthews retaliated against Plaintiff when, together, they "den[ied] her request for a reassignment, counsel[ed] her for alleged performance issues without a legitimate basis, and transferr[ed] her to a less desirable position," (*id.* ¶ 82).

In reaching its decision, the Court notes that Plaintiff's allegations are sparser than what is commonly seen in cases where a worker alleges joint employment. For example, Plaintiff does not allege that C.W. Matthews hired her, assigned her to the construction project in question, dictated her work schedule there, or controlled her compensation or benefits. Had Plaintiff alleged those facts, the Court would more readily conclude that she had sufficiently alleged that she was jointly employed by C.W. Matthews. But the mere fact that those allegations are missing does not doom Plaintiff's theory at this stage in the proceedings. In

15

fact, the Court notes that the amended complaint does not contain much more factual detail supporting her contention that she was employed by GDOT. For instance, Plaintiff does not allege that GDOT controlled her assignment to the project relevant to this case, controlled her work schedule, or was responsible for her compensation or benefits.[3]

To recap, Plaintiff alleges the facts that show or create an inference that C.W. Matthews (1) through Bowden, supervised Plaintiff and had apparent control over the day-to-day conditions of her employment, most obviously through his alleged harassment of Plaintiff; (2) through its relationship with GDOT on the project and elsewhere, could impact her job assignment or reassignment and even "come after

---

[3] C.W. Matthews takes pains to point out that GDOT is a multi-billion dollar department of the State of Georgia, and that C.W. Matthews is one of the largest road contractors in the state. [*See* Doc. 28 at 3, n.1, Exs. 1, 2.] While C.W. Matthews does so in an attempt to argue that GDOT and C.W. Matthews have a "normal [contractor] relationship," it seems instead to emphasize that they do not have a simple provision-of-services relationship of customer to contractor. Even assuming the Court should consider the exhibits filed for the first time on reply, or could consider the exhibits without converting the motion to one for summary judgment, they tend to show that C.W. Matthews is a large government construction contractor, completing full-service road projects in the amount of at least many tens of millions of dollars (and providing them at a commensurate costs savings over other, higher bidders), which would in many ways seem to represent a large-scale joint venture between the two. [*Id.*]

her";[4] and (3) had supervisors who at some point received her complaints and applied its employee policies to Bowden's treatment of her; and (4) exerted influence or control over actions made in retaliation for her complaints about Bowden.  Moreover, Plaintiff specifically alleges that GDOT and C.W. Matthews together discriminated and retaliated against her when they reprimanded her without legitimate bases, failed to protect her from Bowden's harassment, and attempted to demote her or transfer her to a less desirable role.  (Am. Compl. ¶¶ 74, 82.)  This is enough.

The cases that C.W. Matthews cites in its motion do not compel a different result.   In each of those cases, the allegations of joint employment were meaningfully more meager that those in the case at bar.  *See Isaacs v. Felder Servs., LLC*, No. 2:13-CV-693-MEF, 2014 WL 2806128, at *1-3 (M.D. Ala. June 20, 2014) (allegation that plaintiff worked "on site and under the supervision of

---

[4] Indeed, it would be plausible to infer from these allegations not only that C.W. Matthews exerted influence to prevent her from being reassigned or otherwise protected from Bowden when she made her initial complaints about his behavior, but that it sought her reassignment when her complaints reached a threshold requiring specific intervention by GDOT and C.W. Matthews, and that it only capitulated to Bowden's reassignment when Plaintiff sought a restraining order (and even then, allowed Bowden to return to the job site and harass Plaintiff and otherwise sought to retaliate against her).

17

management" at a rehab center was insufficient to establish joint employment, by the rehab center when claim was based upon a later retaliatory termination by primary employer acting alone); *Woldu v. Hotel Equities, Inc.*, No. 1:09-CV-0685-HTW-CCH, 2009 WL 10668443, at *13 (N.D. Ga. Sept. 18, 2009), *report and recommendation adopted*, 2010 WL 11507854 (N.D. Ga. Mar. 18, 2010) ("Plaintiff pleads no more than [that the purported 'joint employer'] performed human resources services for [the primary employer]:  it kept files; prepared payroll; administered tests; advised on complaints, and [only] participated in the decision to terminate Plaintiff and the execution of that decision."); *Lopez v. Assurance Quality Grp., Inc.*, No. 3:13-CV-077-TCB-RGV, 2013 WL 12090613, at *1, 3-6 (N.D. Ga. Nov. 8, 2013), *report and recommendation adopted*, 2013 WL 12091211 (N.D. Ga. Dec. 10, 2013) (temporary staffing company employee alleged only "a mechanical recitation of the elements of a joint employer relationship," with regard to staffing company client to whom she was assigned, and essentially asked for a fishing expedition to obtain more information).

In large part, the Court's conclusion at this juncture rests on the Eleventh Circuit's statement in *Llampallas* that the question of joint employment must "concentrate on the degree of control an entity has over the adverse employment

decision on which the Title VII suit is based." *Llampallas*, 163 F.3d at 1244-45; *see also Craighead v. Austal USA, LLC*, No. CV 17-0445-WS-MU, 2017 WL 6559917, at *4 (S.D. Ala. Dec. 21, 2017) (for purposes of joint employer analysis, control over "essential terms and conditions" of plaintiff's employment included involvement in "investigating [the plaintiff]'s sexual harassment complaint, or maintain[ing] control over which shifts [the plaintiff] worked, which supervisor he reported to, or the like"); *Cannell v. Corizon, LLC*, 1:14-cv-405-NT, 2015 WL 8664209, at *5 (D. Me. Dec. 11, 2015) (determining that plaintiff had sufficiently alleged a joint employer relationship between contractor and the department of corrections ("DOC") when the complaint alleged that although the plaintiff was technically employed by the contractor, she worked at a facility operated by the DOC; she was required to receive training from DOC employees; she was told she needed to speak with the DOC about her reports of discrimination; and that the DOC actively participated in the decision to terminate her).  Here, Plaintiff's Title VII claims are premised on the allegations that Bowden, a C.W. Matthews employee, her alleged supervisor, and Project Foreman at her job site, relentlessly harassed her for over four months and that that C.W. Matthews, despite knowing of Bowdon's conduct, did nothing to stop it.  Plaintiff also alleges that C.W.

19

Matthews and GDOT, acting together, reprimanded, reassigned, attempted to demote, and failed to promote her.  In other words, Plaintiff has alleged, and the Court must take as true for present purposes, that C.W. Matthews had direct control over every adverse action alleged in this case.

Along these lines, this Court is persuaded by the reasoning in *Kaiser v. Trofholz Technologies, Inc.*, 935 F. Supp. 2d 1286 (M.D. Ala. 2013).  In *Kaiser*, the court found that the plaintiff had pled sufficient factual allegations to plausibly suggest that a military general contractor, Booz Allen, was her joint employer along with her direct employer-subcontractor, Trofholz.  The plaintiff alleged that (1) her supervisor was a Booz Allen employee; (2) her Booz Allen supervisor could impact whether Trofholz, her primary employer, kept its contract with Booz Allen; (3) her Booz Allen supervisor was the one who harassed and berated the her; (4) the Booz Allen supervisor reported (falsely) about the plaintiff's job performance to Trofholz and could thus affect the plaintiff's job evaluation; and (5) the supervisor was "angry that she had complained and Booz Allen gave Trofholz the ultimatum to either fire Plaintiff or lose its contract."  *Id.* at 1293.  The court reasoned that allegations that the plaintiff was supervised by an employee of the putative joint employer, that she was harassed by that same employee, and that the putative joint

20

employer and harassing supervisor had the ability to influence the plaintiff's employment status was sufficient for purposes of Title VII liability at the pleading stage. *Id.*; s*ee also Coto v. Cardinal Grp. Mgmt. & Advisory, LLC*, No. 8:17-CV-704-T-30MAP, 2017 WL 2464092, at *2 (M.D. Fla. June 7, 2017) (finding joint employer allegations sufficient based upon assertions that joint employer was owner of the subject properties where plaintiff worked, shared management decisions and supervisory duties, requested plaintiff to remain as a manager throughout the process of the sale of the subject properties, and informed plaintiff that her pregnancy was "very bad timing").

At this juncture, having to accept Plaintiff's allegations and reasonable inferences from them as true, the Court finds that Plaintiff has alleged sufficient factual allegations to raise the inference that C.W. Matthews was her joint employer for purposes of Title VII liability above the speculative level. Whether C.W. Matthews jointly employed Plaintiff is essentially a factual question that the parties can explore in discovery. Indeed, the Court's determination at this time in no way prejudices C.W. Matthews's ability to challenge Plaintiff's joint employment contentions at any time following discovery into the matter. Based solely on the pleadings, however, C.W. Matthews's motion to dismiss Plaintiff's Title VII

claims for failing to allege that it employed her should be denied.

## 2.    Discrimination Based Upon Sexual Orientation

The Court next addresses C.W. Matthews's argument that Plaintiff's Title VII disparate treatment and retaliation claims (Counts II and III) should be dismissed in their entirety because sexual orientation is not a protected class under Title VII. [Doc. 22 at 10-11.]  The parties agree that under current Eleventh Circuit precedent, workplace discrimination based solely on an individual's sexual orientation status is not actionable under Title VII.  *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1255-56 (11th Cir.), *cert. denied*, 138 S. Ct. 557 (2017) (citing *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979)).  The parties also agree, however that "[d]iscrimination based on failure to conform to a gender stereotype is sex-based discrimination," *id.* at 1254 (citing *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011)), and it is an "unsurprising reality that some individuals who have experienced discrimination because of sexual orientation will also have experienced discrimination because of gender nonconformity," *id.* at 1259 (William H. Pryor, J., concurring).  Thus, regardless of an individual's sexual orientation, "all persons . . . are protected from discrimination on the basis of gender stereotype," *Glenn*, 663 F.3d at 1318, and remarks about a person's gender

nonconforming behavior are evidence that an employer discriminated on the basis of sex, by holding men and women to different standards of behavior, *Evans*, 850 F.3d at 1260-61 (discrimination on the basis of sexual orientation *status* is not actionable, but discrimination on the basis of gender nonconforming *behavior* is); *see also Glenn*, 663 F.3d at 1317-20 ("discrimination against plaintiffs because they fail to act according to socially prescribed gender roles" is sex discrimination).

Based on the Court's review of the complaint, and taking all inferences in favor of Plaintiff as the nonmoving party, the Court rejects C.W. Matthews's argument that Plaintiff's disparate treatment and retaliation claims must be dismissed in their entirety. While some of Bowden's alleged comments appear to suggest that he (and C.W. Matthews) were motivated by animus toward Plaintiff due to her sexual orientation, his comments can also be understood to reflect an animus toward Plaintiff because of her sex and because she did not conform to Bowden's view of how a woman should act.

To be sure, Plaintiff explicitly asserts that sexual orientation was a motive, and in her response brief acknowledges that a Title VII claim for sexual orientation discrimination is not recognized in this Circuit. [*See* Doc. 26 at 16 n.2.] Thus, to the extent that Plaintiff's amended complaint seeks to assert a separate claim for

relief for discrimination under Title VII based solely on her sexual orientation status, C.W. Matthews's motion to dismiss should be granted.[5]  But Counts II and III should be allowed to proceed as they are also predicated on discrimination on the basis of Plaintiff's sex.

### 3. Factual Sufficiency of the Plaintiff's Title VII Claims

Next, the Court addresses C.W. Matthews's arguments that the Title VII disparate treatment and retaliation claims (again, Counts II and III) should be dismissed because Plaintiff has failed to identify comparators outside her protected class who were treated more favorably or allege that she suffered an adverse employment action.  [Doc. 22 at 11-15.]

It is axiomatic that a Plaintiff in an employment discrimination case is not required to allege facts establishing each element of the *McDonnell Douglas* prima facie case to survive a motion to dismiss.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); *see also McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800-801, n.4 (11th Cir. 2014) (acknowledging that "*Twombly* effectively overruled

---

[5] The Court notes that there is a petition for hearing *en banc* in *Bostock v. Clayton County, Georgia*, Case No. 17-13801-BB (11th Cir. 2018), wherein the petitioner asks that the Eleventh Circuit reconsider the panel decision in *Evans*. Should the Eleventh Circuit's guidance regarding sexual orientation discrimination change, Plaintiff is free to move this Court for appropriate relief at that time.

24

*Swierkiewicz* when it rejected the old standard for dismissal" but that "this had no impact on *Swierkiewicz*'s statement that a plaintiff is not required to plead a prima facie case of discrimination in order to survive dismissal"). Rather, the complaint it must provide enough factual matter, taken as true, to suggest intentional discrimination or retaliation. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008).

C.W. Matthews's arguments are unavailing. Comparator evidence is but one way of demonstrating discriminatory intent, and the failure to allege a comparator does not doom a plaintiff's case. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). Indeed, the circumstantial evidence necessary to present a prima facie Title VII case of discrimination under *McDonnell Douglas* is "flexible and depend[s] on the particular situation." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citations omitted). Plaintiff has offered specific allegations that tend to show that her supervisor, Bowden, was motivated by discriminatory animus, that C.W. Matthews was aware of his conduct, and that C.W. Matthews would "come after her" for complaining about his discriminatory conduct. As such, Plaintiff has offered sufficient factual allegations to raise and inference that C.W. Matthews was motivated by

discriminatory or retaliatory intent for pleading purposes.  Likewise, an inference of retaliatory intent in this case would also be raised by the close temporal proximity between the alleged protected activity and the retaliation.  *Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

Whether Plaintiff suffered an adverse employment action is a closer call; however, at this stage of the proceedings, Plaintiff's allegations are sufficient because she has alleged that she was subjected to a hostile work environment harassment, which itself can qualify as a tangible employment action for purposes of a discrimination claim.  *See Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016); *see also Hulsey v. Pride Rests.*, LLC, 367 F.3d 1238, 1247 (11th Cir. 2004) (holding that harassment and tangible employment action are "not separate claim[s]" but merely "label[s] use to describe" the manner in which conduct discriminates against an individual).  "It may turn out that discovery reveals that the facts of this case fit a hostile work environment theory better than a tangible employment action theory, in which case the [GDOT and C.W. Matthews] will be likely to succeed on [at least] a motion for partial summary judgment.  But at this stage, Plaintiff[ is] entitled to proceed on both

26

theories." *Winstead*, 197 F. Supp. 3d at 1341.  As a result, C.W. Matthews's motion to dismiss Plaintiff's discrimination claim only as it pertains to the alleged tangible employment actions specifically identified in Count II should be denied.

Likewise, Plaintiff has sufficiently pled facts that she suffered an adverse employment action for purposes of a retaliation claim.  A plaintiff may succeed on a retaliation claim if "a reasonable employee would have found the challenged action materially adverse," that is, that the challenged action would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Jones v. Ala. Power Co.*, 282 F. App'x 780, 784-85 (11th Cir. 2008).  "This more liberal view of what constitutes an adverse employment action accords an employee protection from a wider range of retaliatory conduct," and in fact protects an employee from adverse actions in the form for reprimands, unfavorable reviews, and the like. *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008).  Here, Plaintiff has alleged she was denied a requested reassignment, subjected to unfair performance evaluations, and threatened with transfer to a less desirable position, all in retaliation for complaining about Bowden's conduct.  Whether those actions are ultimately sufficient to form the basis of a retaliation

claim can be addressed at summary judgment after the parties have had the benefit of discovery.   Thus, C.W. Matthews's motion to dismiss Plaintiff's retaliation claim as it pertains to the alleged tangible employment actions identified in Count III should also be denied.

### 4.   Summary

In sum, Counts I, II, and III should be allowed to proceed as to C.W. Matthews, except that to the extent that Counts II and III are predicated on discrimination solely on the basis of sexual orientation; to that extent, those claims should be dismissed.

### C.   Plaintiff's State Law Claims Against C.W. Matthews and Bowden

C.W. Matthews and Bowden argue that Plaintiff's state law claims against them are subject to dismissal for a variety of reasons.   The Court addresses the arguments asserted for dismissal below.

### 1.   C.W. Matthews's Vicarious Liability for Bowden's Alleged Sexual Misconduct

C.W. Matthews argues that the state-law sexual harassment, false imprisonment, and IIED claims (Counts IV, V, and VI) should be dismissed against it because Plaintiff has not alleged sufficient facts to support a viable theory for vicarious liability.  [Doc. 22 at 15-19.]  Plaintiff responds that the issue should not

28

be resolved on a motion to dismiss, and that in any event, she has alleged sufficient facts to support C.W. Matthews's vicarious liability.  [Doc. 26 at 20-22.]

Under Georgia law, an employer "cannot be held liable for the tortious acts committed by their employees outside the scope of employment and not in furtherance of the [employer]'s business," even if the employer "allowed [the wrongdoer] access into [the victim's space] and provided him with an opportunity to commit tortious acts against [her]."  *Piedmont Hosp., Inc. v. Palladino*, 276 Ga. 612, 613 (2003); *see also Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 752 (1996) (sexual misconduct of employee was unrelated to employee's duties and therefore outside scope of employment or in further of employer's business).  While, "[a]n employer may ratify tortious conduct by an employee, and thereby assume liability for unauthorized conduct," in order "for liability to be imposed on the employer by ratification, there must [still] be evidence that the employee's conduct was done in furtherance of the employer's business and within the scope of the employment."  *Travis Pruitt & Assocs. P.C. v. Hooper*, 277 Ga. App. 1, 3-4  (2005) (citations omitted); *see also Cramer v. Bojangles' Rests., Inc.*, 2:10-CV-0159-RWS-SSC, 2012 WL 716176, at *16-17 (N.D. Ga. Feb. 8, 2012) (even if employer had knowledge of tortious conduct, without facts

29

supporting that tortious conduct was "committed in furtherance of [the employer's] business rather than for [] personal reasons," liability does not attach), *report and recommendation adopted*, 2012 WL 716028 (N.D. Ga. Mar. 6, 2012), *aff'd*, 498 F. App'x 885 (11th Cir. 2012); *Holy Fellowship Church of God in Christ v. Brittain*, 240 Ga. App. 436, 438 (1999) ("For ratification to be effective, the principal must know of the agent's unauthorized act and, with full knowledge of all the material facts, accept and retain the benefits of the unauthorized act.").

Here, there are no factual allegations suggesting that Bowden's alleged misconduct was done in furtherance of C.W. Matthews's business or within the scope of his employment.  Although Plaintiff argues that a presumption exists that an on-duty employee is acting within the scope of his employment, the case Plaintiff relies upon—*Davis v. Childers*, 134 Ga. App. 534, 535 (1975)—is over 40 years old, and does not address the *Travis Pruitt* court's direction that for vicarious liability to attach, there must be facts showing that conduct was both in furtherance of the employer's business and within the scope of the employment. *See Travis Pruitt*, 277 Ga. App. at 3-4.[6]  Plaintiff has not alleged in the amended

---

[6] The presumption discussed in *Littlefield Const. Co. v. Bozeman*, 314 Ga. App. 601, 603 (2012), also cited by Plaintiff, is limited to motor vehicle accidents in company cars.

complaint how the alleged harassment was in furtherance of C.W. Matthews's business.

The other cases cited by Plaintiff do not counsel otherwise. *Newsome v. Cooper-Wiss, Inc*., simply discussed liability for negligent retention and supervision of an employee who subjected the plaintiff to harassment, and did not address issues of vicarious liability for the sexual misconduct itself. 179 Ga. App. 670, 672 (1986). *Wiley v. Georgia Power Co*., 134 Ga. App. 187 (1975), on the other hand, which Plaintiff cites to argue that ratification occurs simply by an employer's retention of a known harasser, was explicitly "overruled to the extent [that it] h[e]ld that an employer can be held liable by ratifying sexual harassment committed by an employee not in furtherance of the employer's business . . . ." *Travis Pruitt*, 277 Ga. App. at 3. Finally, in *Agnes Scott College, Inc. v. Hartley*, which Plaintiff uses to argue that the issue should not be resolved on a motion to dismiss, the defendant's answer affirmatively admitted the complaint's "repeated alleg[ation]s that the tortious conduct occurred while [the employees] were acting in the line and scope of their employment with Defendant." 330 Ga. App. 575, 577 (2015) (internal quotations and citations omitted). C.W. Matthews makes no such admission here.

31

Accordingly, because the amended complaint includes no factual allegations whatsoever that Bowden's misconduct took place in furtherance of C.W. Matthews's business, Plaintiff's state law claims against C.W. Matthews based upon vicarious liability for Bowden's misconduct—specifically Counts IV-VI for sexual harassment, false imprisonment, and IIED—should be dismissed as to C.W. Matthews.

### 2.    Plaintiff's State Law Claim for Sexual Harassment

C.W. Matthews and Bowden next argue that Plaintiff's state law claim for sexual harassment should be dismissed because there is no cognizable cause of action for sexual harassment, independent of other intentional torts, under Georgia law. [Doc. 22 at 19-20; Doc. 23 at 3-4.]  The Court agrees.  *See Orquiola v. Nat'l City Mortg. Co.*, 510 F. Supp. 2d 1134, 1139 (N.D. Ga. 2007) ("[T]here is no distinct tort in Georgia law for 'sexual harassment' . . . ."); *Canty v. Fry's Elecs., Inc.*, 736 F. Supp. 2d 1352, 1379 (N.D. Ga. 2010) ("There is no distinct tort in Georgia law for harassment, retaliation, or discrimination.").  Georgia courts have merely recognized that discriminatory, harassing, or retaliatory conduct may form the basis of other tortious claims, such as a claim for IIED.  *See Trimble v. Circuit City Stores, Inc.*, 220 Ga. App. 498, 500 (1996) (sexual harassment); *Yarbray v. S.*

32

*Bell Tel. & Tel. Co.*, 261 Ga. 703, 706 (1991) (retaliatory demotion and threats). Plaintiff's citation to *Coleman v. Housing Authority of Americus*, 191 Ga. App. 166, 169 (1989) is unavailing. [Doc. 25 at 5-10.] In *Coleman*, the plaintiff alleged only that her supervisor "sexually harassed [her] over the course of three years, [and] that his conduct amounted to the intentional infliction of mental, physical, and emotional distress." *Id.* at 167. As a result, the *Coleman* court never considered, much less recognized, a claim for sexual harassment as an independent tort under Georgia law.[7] As a result, Plaintiff has no authority for the proposition that Georgia law recognizes an independent tort for sexual harassment, and this Court declines to create one now. Accordingly, Plaintiff's state law claim for sexual harassment should be dismissed in its entirety.

### 3.    Plaintiff's State Law Claim for False Imprisonment

C.W. Matthews and Bowden also contend that Plaintiff's state law claim for false imprisonment is subject to dismissal because (1) it is supported by no more

---

[7] At best for Plaintiff, the court in *Coleman* simply recognized that IIED involving sexual harassment was subject to a special demonstration, in light of the "existence of a special relationship in which one person has control over another, as in the employer-employee setting." *See Coleman*, 191 Ga. App. at 169-70 (laying out formulation of IIED prima facie case for sexual harassment in the workplace). The Court addresses the implications of this formulation in its discussion of Plaintiff's IIED claim below.

than conclusory allegations, and (2) accepting Plaintiff's allegations as sufficient to state a claim would result in a slippery slope in which nearly any harasser (and his employer) could be liable for false imprisonment.  [Doc. 22 at 20-22; Doc. 23 at 4-5; *see also* Doc. 28 at 14-15.]  C.W. Matthews and Bowden's arguments are without merit.

Under Georgia law, false imprisonment consists of the unlawful detention of another, *for any length of time*, where the person is deprived of her personal liberty. O.C.G.A. § 51-7-20 (emphasis added).  Restraint constituting false imprisonment may arise out of "words, acts, or gestures" that cause a "reasonable apprehension that force will be used" or fear that "personal difficultly or personal injuries" will arise if the individual does not submit.  *Williams v. Food Lion, Inc.*, 213 Ga. App. 865 (1994); *see also Burrow v. K-Mart Corp.*, 166 Ga. App. 284 287-88 (1983).  If an individual freely and voluntarily "surrender[s] her freedom of motion," there is no actionable claim for false imprisonment; however, "[a] person need not make an effort to escape or to resist . . . thereby risking possible physical injury, before [s]he can recover."  *Mitchell v. Lowe's Home Ctrs.*, 234 Ga. App. 339, 341 (1998) (citing *Kemp v. Rouse-Atlanta Inc.*, 207 Ga. App. 876, 879 (1993), *Williams*, 213 Ga. App. at 868); *see also J.H. Harvey Co. v. Speight*, 178 Ga. App. 812, 813

34

(1986) (remaining with defendant to clear suspicion of, for instance, shoplifting, or otherwise accommodating defendant's desires, is not actionable false imprisonment).

C.W. Matthews and Bowden's first argument—that Plaintiff has pled only a formulaic recitation of the elements of a false imprisonment claim—fails. While Plaintiff does plead that she had "reasonable apprehension . . . that force would be used if she refused to submit to [Bowden's] unlawful requests and sexual advances," generally within her cause of action (*see* Am. Compl. ¶¶ 96-105), her supporting factual allegations, both within and preceding the false imprisonment count, are much more robust. In particular, the Court finds the following allegations compelling:

- As background to the specific incidents complained of, Plaintiff alleges that while groping his penis, Bowden make comments such as "You are afraid of this," (*id.* ¶ 24); that he approached her in an aggressive manner, telling her "You need to stay in a woman's place," (*id.* ¶ 39); that he told her that God "despises your kind, and you're going to hell," (*id.* ¶ 40); and that she was told that C.W. Matthews would "come after her" for seek protection from Bowden (*id.* ¶ 45).

35

- Plaintiff specifically asserts that "Bowden would come into Mrs. Crater's office and stand in front of her door while making inappropriate gestures (i.e., grabbing his penis) preventing her from accessing the only means of egress . . . accomplished . . . by blocking her from leaving the worksite with his car . . . and blocking her office door so she could not leave." (*Id.* ¶¶ 98-99.)

- And in the most egregious (and specific) example, Plaintiff states that "[o]n April 27, 2016, as [Plaintiff] was locking the gate to leave, Bowden pulled up in front of her in his truck, laughed and stated, 'I know you miss me. Why you looking like you scared of me?' He [then] got out of his truck and walked toward her holding his penis stating, 'I ain't gonna hurt you, unless you want me to.'" (*Id.* ¶ 28; *see also id.* ¶ 99).

- Plaintiff makes clear that she was fearful of Bowden's conduct, expressing repeated concern to supervisors, (*id.* ¶¶ 36, 45), and even seeking a restraining order against Bowden from the county sheriff, (*id.* ¶ 51).

Based on these allegations, the Court concludes that Plaintiff has specifically

36

alleged that Bowden used words and acts—including harassment, intimidating words and gestures, and blocking her exit with his body and truck—to limit her freedom, and that he created a reasonable fear in Plaintiff that he would use force or otherwise cause "personal difficulties" to Plaintiff if she resisted.  There is no suggestion that Plaintiff voluntarily surrendered her freedom in any of these incidents, or that she wished to accommodate Bowden.  Moreover, as stated above, the length of any restraint is irrelevant, as the statute protects against imprisonment for "any length of time."  O.C.G.A. § 51-7-20.  As a result, Plaintiff's allegations are sufficient to state a plausible claim for relief at this stage.

Turning to C.W. Matthews and Bowden's slippery slope argument—such reasoning avoids engaging with the substantial allegations Plaintiff has made, and instead tries to shift attention an extreme hypothetical not before the Court. Plaintiff has not, as they suggest, alleged merely that a harasser stood between her and the door and made an inappropriate comment.  She has alleged that someone who harassed her for months, and against whom she felt the need to seek a restraining order to protect herself, physically blocked her exit with his body and his truck, and while doing so, threatened or intimidated her.  This is enough. Whether or not less egregious allegations presented by their counter-factual

hypothetical harasser would amount to false imprisonment is irrelevant to the present case.

For these reasons, Plaintiff's false imprisonment claim should be allowed to proceed against Bowden.

### 4.   IIED

C.W. Matthews and Bowden argue that Plaintiff's IIED claim should be dismissed because her allegations that "Bowden made series of sexual comments, while sometimes holding his penis, are not sufficient to meet the high standard" of outrageous conduct to sustain a claim for relief for IIED.  [Doc 22 at 22-23; Doc. 23 at 5-6.]

Under Georgia law, in order to prevail on an IIED claim, a plaintiff must allege conduct that was:  "(1) intentional or reckless; (2) extreme and outrageous; and (3) the cause of severe emotional distress."  *Wilcher v. Confederate Packaging, Inc.*, 287 Ga. App. 451, 453 (2007).  Liability for IIED has been found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Farrell v. Time Serv., Inc.*, 178 F. Supp. 2d 1295, 1299 (N.D. Ga. 2001) (quoting *Biven Software, Inc. v. Newman*, 222 Ga.

App. 112, 113-14 (1996)) (finding termination based upon sex and pregnancy did not support IIED claim); *see also Cornelius v. Auto Analyst, Inc.*, 222 Ga. App. 759, 762, n.2 (1996) (finding language threatening criminal prosecution when none was available did not amount to IIED).   Normally, the "issue of whether the allegations rise to the requisite level of outrageousness is a question of law for the court to decide." *Farrell*, 178 F. Supp. 2d at 1299 (quoting *Biven*, 222 Ga. App. at 114); *Gordon v. Frost*, 193 Ga. App. 517, 521 (1989) (outrageousness is a question for the court, unless reasonable persons could disagree, in which case the question should be decided by a jury)).

On one hand, "[i]t is clear that tasteless and rude social conduct is not actionable, along with insults, indignities, threats, and petty oppression . . . [and that] 'disadvantageous employment actions standing alone cannot serve as the basis for the tort of intentional infliction of emotional distress.'" *Johnson v. Douglas Cty. Sch. Dist.*, 1:09-CV-01023-BBM-RGV, 2009 WL 10665025, at *12 (N.D. Ga. Nov. 12, 2009) (citing *Kornegay v. Mundy*, 190 Ga. App. 433, 343-35 (1989) and quoting *Wilson v. Ga. Pac. Corp.*, 4 F. Supp. 2d 1164, 1168 (N.D. Ga. 1998)) (rejecting IIED claim based upon conclusory allegations of harassment and racially motivated reprimand and demotion), *report and recommendation adopted*, 2009

WL 10668529 (N.D. Ga. Dec. 8, 2009).  On the other hand, the "workplace is not a free zone in which the duty not to engage in willfully and wantonly causing emotional distress through the use of abusive or obscene language does not exist," and because the workplace often provides a "captive victim who may fear reprisal for complaining," where there has been a campaign of harassment by a supervisor or manager on the job, a claim for IIED may lie upon a showing of that the harassing behavior was "willful and wanton or intentionally directed to harm plaintiff," would "naturally humiliate, embarrass, frighten, or outrage the plaintiff," and "caused mental suffering or wounded feelings or emotional upset or distress. *Coleman*, 191 Ga. App. at 168-69 (sufficient evidence to support IIED claim based upon the "cumulative effect" of the following:  female plaintiff alleged that her male supervisor engaged in a continuous campaign of sexual harassment, which included giving her pornographic videotapes, showing her sexually explicit cartoons, inquiring about her sexual relations with her husband, making repeated sexual compliments and overtures, and repeatedly barraging her with abusive, obscene, racist, and sexual jokes; all despite her repeated protests; and which resulted in "physical manifestations (headaches, crying, chest pains) as well as mental and emotional symptoms").  The *Coleman* decision—allowing an IIED

40

claim to proceed based upon generally less extreme workplace harassment—flows the fact that the outrageousness in such instances is exacerbated by the existence of a relationship in which one person inherently has authority over another; where there is increased awareness of a victim's particular susceptibility; and where supervisor has control over the severity of additional resultant harms. *See Trimble*, 220 Ga. App. at 500 (finding workplace sexual harassment sufficient to state a claim for relief) ("By its very nature, the [supervisory workplace] relationship provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition, and it presents a hierarchy of structured relationships that cannot easily be avoided.") (citations and quotations omitted)).

This is a close call, but the Court is persuaded that Plaintiff has alleged sufficient facts to support her IIED claim at the pleading stage.  Plaintiff has pled that she suffered a campaign of harassment by Bowden, her supervisor; that in addition to harassing her, Bowden acted in an intimidating manner and restricted her ability to leave her office and the job site; that neither C.W. Matthews nor GDOT took action against Bowden following her complaints; that in fact, she was informed Bowden or C.W. Matthews would "come after her" if she sought protection; that she was forced to seek a restraining order to protect herself; that

41

even after Bowden was finally removed from the project, he returned to harass her; and that she also suffered retaliation in the form of adverse employment actions and vehicle tampering. This is sufficient to survive a motion to dismiss. *Coleman*, 191 Ga. App. at 168-69; *see also Trimble*, 220 Ga. App. at 500; *Yarbray*, 261 Ga. at 706 (retaliatory demotion and additional threats sufficient).

The cases on which C.W. Matthews and Bowden rely, *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 804, 808-09 (11th Cir. 2012), and *Mangrum v. Republic Indus., Inc.*, 260 F. Supp. 2d 1229, 1239, 1256-57 (N.D. Ga. 2003), are inapposite. Both cases were decided on motions for summary judgment after evidence demonstrated that the emotional distress element of an IIED claim could not be met. *See Guthrie*, 460 F. App'x at 804 (rejecting IIED claim at summary judgment where Title VII harassment claim would not stand and where plaintiff did not feel threatened by "rude and boorish" behavior that included "dirty" talk and asking her on dates 10 to 20 times); *Mangrum*, 260 F. Supp. 2d at 1256-57 (rejecting IIED claim at summary judgment where supervisor asked plaintiff for oral sex and exposed himself, and plaintiff's sales were effect by rebuffing sexual overtures, *even though conduct was arguably extreme and outrageous*, because there was no evidence showing requisite intent or that emotional distress was

42

severe).  In contrast, the Court finds persuasive the decision in *Fortson v. Columbia Farms Feed Mill*, where the court held that the an IIED claim survived at the pleading stage where the plaintiff alleged twenty-one instances of verbal abuse and racial harassment over several months, along with fact that supervisory employees did nothing to stop it despite his complaints.  No. 3:13-CV-51 CDL, 2013 WL 5348097, at *4 (M.D. Ga. Sept. 23, 2013).[8]  Accordingly, the motions to dismiss, as they pertain to Plaintiff's claim for IIED asserted against Bowden, should be denied.[9]  Plaintiff's IIED claim should be allowed to proceed against Bowden.

### 5.    Negligent Supervision and Retention

C.W. Matthews finally argues that the Plaintiff fails to state a claim for negligent supervision or retention because there are no allegations that it knew or should have known of most of Bowden's misconduct, and that to the extent it did know of the conduct, the allegations tend to show it acted reasonably to remove

---

[8] At summary judgment, the district court granted judgment in favor of the defendant on the IIED claim.  *See Fortson v. Carlson*, 618 F. App'x 601, 609 (11th Cir. 2015) (affirming summary judgment for defendant on IIED claim, after evidence showed only twelve offensive insults).

[9] The Court notes that, Plaintiff's IIED claim is asserted directly against Bowden, and that she only alleges that C.W. Matthews is vicariously liable.  The Court expresses no opinion regarding the viability of a claim for IIED against C.W. Matthews directly.

him from the construction project. [Doc. 25 at 23-24.] Thus, C.W. Matthews maintains, "Plaintiff's own allegations demonstrate that [its] remedial measures in directing Bowden not to contact her and removing him from the project were sufficient to avoid any further alleged sexual harassment." [Doc. 28 at 12-13].[10]

A claim for negligent hiring, retention, or supervision arises under Georgia law when an employer negligently hires, retains, or supervises an employee and that employee subsequently harms the plaintiff. *See Farrell*, 178 F. Supp. 2d at 1300; *see also* O.C.G.A. § 34-7-20 (an "employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency"). To establish such a claim, a plaintiff must allege that the employer knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff. *Farrell*,

---

[10] C.W. Matthews also contends in a footnote that because the underlying tort claims should be dismissed for separate reasons, the derivative negligent supervision and retention claims are likewise subject to dismissal. The Court agrees that there must be a state law tort alleged to support such claims, because negligent supervision and retention are "derivative" claims that can only survive to the extent that the underlying state tort claim survives. *See, e.g., Metro. Atlanta Rapid Transit Auth. v. Mosley*, 280 Ga. App. 486, 489 (2006); *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 41 (1999). But because the Court recommends that at least some of the tort claims be allowed to proceed, it need not address this argument.

178 F. Supp. 2d at 1300; *see also Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (2009); *H.J. Russell & Co. v. Jones*, 250 Ga. App. 28, 30 (2001).

In this case, Plaintiff has alleged ongoing wrongdoing by Bowden, the Project Foreman and her supervisor, from March through August 2016 (Am. Compl. ¶ 17); that C.W. Matthews had actual or constructive knowledge of the wrongdoing "[a]t all times relevant to this action" (*id.* ¶ 65; *see also id.* ¶¶ 90, 105, 109, 117); that C.W. Matthews affirmatively knew of the misconduct at the latest in July 2016 (*id.* ¶¶ 53, 54), and that because of C.W. Matthews's inaction, she suffered preventable harm at Bowden's hands after that time (*see generally, id.* ¶¶ 17-60, 110-20).  That Plaintiff has specifically alleged that C.W. Matthews should have known about misconduct by its own Project Foreman is sufficient for pleading purposes, and C.W. Matthews has presented no authority to the contrary.  Indeed, in *Liscar v. Pediatric Acute Care of Columbus, P.C.*, the court sustained a negligent supervision and retention claim when the plaintiff showed simply that the harasser "remained in contact with [Plaintiff] at work and continued to retaliate against her," following her complaints.  *Liscar*, No. 4:12-CV-08 CDL, 2014 WL 1393110, at *3

(M.D. Ga. Apr. 9, 2014).[11]  Plaintiff has alleged just those facts here.  Accordingly, C.W. Matthews's motion to dismiss Plaintiff's negligent supervision and retention claim should be denied, and the negligent supervision and retention claim against it should allowed to proceed.

### 6.    Punitive Damages and Attorney Fees

C.W. Matthews and Bowden perfunctorily argue that Plaintiff's request for punitive damages and attorney fees should be dismissed because Plaintiff's substantive state law claims fail.  [*See* Doc. 22 at 25, n.3.]  Because some of Plaintiff's substantive state law claims should survive the present motions to dismiss, dismissal of Plaintiff's request for an award of punitive damages and attorney fees would be premature.  *See, e.g., Branch v. O'Brien*, No. 4:14-CV-147, 2014 WL 7405780, at *2 (S.D. Ga. Dec. 29, 2014) (explaining that a request for punitive damages is not a claim, it is only part of a prayer for relief, and is not properly analyzed in a Rule 12(b)(6) motion to dismiss); *Muqbill v. Nationstar Mortg., LLC*, No. 1:14-CV-02406-ODE-WEJ, 2014 WL 12360944, at *7 (N.D. Ga.

---

[11] Similarly to the present case, the complaint in *Liscar* alleged that "Defendants, jointly and severally, negligently supervised and retained [the harasser] . . . after having actual and/or constructive knowledge of [his] propensity to engage in sexual misconduct and retaliation toward female subordinates."  2014 WL 1393110, at *3.

46

Nov. 25, 2014) (avoiding ruling on request for award of punitive damages and attorneys' fees at motion to dismiss stage); *Pinnock v. Selene Fin., LP*, No. 1:13-CV-501-AT-ECS, 2013 WL 12062271, at *9 (N.D. Ga. Dec. 27, 2013) (same). Accordingly, C.W. Matthews's and Bowden's motion to dismiss should be denied as to Plaintiff's prayer for attorneys' fees and punitive damages.

## III.  CONCLUSION

For the reasons outlined above, I **RECOMMEND** that Defendant C.W. Matthews's motion to dismiss be **GRANTED IN PART AND DENIED IN PART**, and that Defendant Bowden's motion to dismiss be **GRANTED IN PART AND DENIED IN PART**.   [Docs. 22, 23.]   Plaintiff's claims against C.W. Matthews for sexual orientation discrimination under Title VII and for sexual harassment, false imprisonment, and IIED under Georgia state law should be **DISMISSED**, as should Plaintiff's state law claim against Bowden for sexual harassment.   Plaintiff's remaining claims against C.W. Matthews and Bowden should be **ALLOWED TO PROCEED**.

47

IT IS SO RECOMMENDED this 3rd day of May, 2018.

JOHN K. LARKINS III
United States Magistrate Judge